UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE LPL FINANCIAL CASH SWEEP LITIGATION, <br> This Document Relates to: <br> ALL ACTIONS. | Case No.: 24-CV-1228 TWR (BJW) <br> **ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT** <br> (ECF Nos. 100, 111, 117) |

Presently before the Court is Plaintiffs Daniel Peters, Douglas K. Nevitt, and Carol White's Motion for Leave to Amend the Complaint ("Mot.," ECF No. 100 & 117 (public redacted)[1]), as well as Defendant LPL Financial LLC's ("LPL") Opposition to ("Opp'n," ECF No. 108) and Plaintiffs' Reply in Support of ("Reply," ECF Nos. 112 (public redacted) and 116 (sealed)) the Motion. The Court took the Motion under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (*See* ECF No. 118.) Having carefully considered Plaintiffs' proposed Amended Consolidated Class Action Complaint ("PACCAC," ECF Nos. 100 & 117-3 (public redacted redline), 111-1 (sealed), 111-2
/ / /

[1] Unless otherwise specified, all ECF citations are to documents filed in lead case number 24-CV-1228 TWR (BJW).

(sealed redline), 117 (public redacted)), the record, the Parties' arguments, and the relevant law, the Court **GRANTS** the Motion.

**BACKGROUND**

Plaintiff Peters filed a putative class action against LPL on July 17, 2024, alleging four causes of action for (1) breach of fiduciary duty; (2) unjust enrichment (in the alternative); (3) unfair or fraudulent business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210; and (4) breach of contract (in the alternative). (*See generally* ECF No. 1 ("*Peters* Compl.").) Plaintiff Nevitt filed a separate putative class action against LPL and its corporate parent, LPL Financial Holdings Inc. ("LPL Holdings") on July 31, 2024, alleging two causes of action for (1) breach of fiduciary duty, and (2) unjust enrichment. (*See generally* Case No. 24-CV-1358 ("*Nevitt*") ECF No. 1 ("*Nevitt* Compl.").) Finally, Plaintiff White filed a separate putative class action against LPL and LPL Holdings on September 26, 2024, alleging five causes of action for (1) breach of fiduciary duty, (2) unjust enrichment, (3) breach of contract, (4) breach of the implied covenant of good faith and fair dealing, and (5) gross negligence. (*See generally* Case No. 24-CV-1724 ("*White*") ECF No. 1 ("*White* Compl.").) Generally speaking, each of the complaints alleged that LPL had paid *de minimis* interest to its clients through its cash sweep programs while keeping for itself the vast majority of the interest earned on its clients' cash during periods of rising interest rates. (*See generally* *Peters*, *Nevitt*, and *White* Compls.)

After *Nevitt* and *White* were transferred to the undersigned as related to Plaintiff Peters' case pursuant to this District's Civil Local Rule 40.1, (*see Nevitt* ECF No. 17; *White* ECF No. 4), the Court consolidated these cases under the caption *In re LPL Financial Cash Sweep Litigation* in Plaintiff Peter's low-numbered case, (*see* ECF No. 30), and appointed interim co-lead counsel pursuant to Federal Rule of Civil Procedure 23(g)(3). (*See* ECF No. 37.) Plaintiffs then filed a Consolidated Class Action Complaint against LPL and LPL Holdings on December 12, 2024, alleging four causes of action for (1) breach of fiduciary duty, (2) unjust enrichment, (3) breach of contract, and (4) breach of the implied covenant

of good faith and fair dealing. (*See generally* ECF No. 38 ("CCAC").) They sought to represent "Clients of LPL who had cash deposits or balances in LPL's Cash Sweep Programs from July 18, 2018, until the unlawful conduct alleged herein ceases." (*See id.* ¶ 155 (emphasis omitted).)

LPL and LPL Holdings moved to dismiss on January 13, 2025. (*See generally* ECF No. 40.) After hearing oral arguments on May 7, 2025, (*see* ECF No. 54; *see also* ECF No. 55 ("Tr.")), the Court issued an Order on June 30, 2025, granting in part and denying in part LPL and LPL Holdings' motion. (*See generally* ECF No. 58 (the "Dismissal Order").) Specifically, the Court dismissed without prejudice Plaintiffs' first cause of action for breach of fiduciary duty, Plaintiffs' third cause of action for breach of contract, and Defendant LPL Holdings but denied the motion as to Plaintiffs' second cause of action for unjust enrichment and fourth cause of action for breach of the implied covenant of good faith and fair dealing. (*See generally id.*) The Court granted Plaintiffs leave to amend, (*see id.* at 43), but Plaintiffs elected to proceed as to their surviving claims, reserving the right to amend "following a reasonable opportunity for discovery." (*See* ECF No. 62.)

LPL answered, (*see* ECF No. 66), and the Honorable Brian J. White issued a Scheduling Order providing that "[a]ny motion to join other parties, to amend the pleadings, or to file additional pleadings shall be filed by **January 15, 2026**." (*See* ECF No. 74 ¶ 1 (emphasis in original).) Plaintiffs did not seek leave to amend or an extension of time before the January 16, 2026 deadline. (*See generally* Docket.)

The Parties then proceeded to discovery. (*See, e.g.*, ECF Nos. 77, 85, 88, 91–93, 96–99.) Plaintiffs served their first set of requests for production of documents on August 1, 2025. (*See* ECF No. 100-2 ("Blatchley Decl.") ¶ 4.) On February 2, 2026, Magistrate Judge White held a Discovery Conference, (*see* ECF No. 88), at which he provided parameters for LPL's document production. (*See* Blatchley Decl. ¶ 8; ECF No. 108-1 ("Floren Decl.") ¶¶ 12–13.) LPL's ensuing document review was significant, requiring a team of 70 attorneys to spend almost 10,000 hours conducting first level-review, followed by additional hundreds of hours of review prior to producing the

documents at issue. (*See* Floren Decl. ¶ 14.) As a result, LPL did not make a material production until mid-April 2026. (*See* Blatchley Decl. ¶ 9; Floren Decl. ¶ 15.) As of August 13, 2026, LPL had produced "more than 60,000 documents (approximately 282,000 numbered pages) and hundreds of millions of pages of customer account data." (*See* Blatchley Decl. ¶ 15.)

Magistrate Judge White held a Status Conference on May 14, 2026, (*see* ECF No. 96), at which Plaintiffs first indicated that they intended to seek an extension of the case schedule. (*See* Blatchley Decl. ¶ 23.) They did not mention at that time that they intended to seek leave to amend their complaint. (*See id.*) Magistrate Judge White set a further Status Conference for June 2, 2026, and ordered the Parties to meet and confer. (*See* ECF No. 96.) Plaintiffs first informed LPL of their intention to file the instant Motion at the ensuing May 28, 2026 meet-and-confer regarding Plaintiffs' proposed extensions to the case schedule. (*See* Blatchley Decl. ¶ 24.)

At the June 2, 2026 Status Conference, Plaintiffs informed Magistrate Judge White that the Parties had been unable to agree on an extension to the case schedule and that Plaintiffs would like to seek leave to amend their complaint to replead their breach of fiduciary duty claim. (*See id.* ¶ 25.) Magistrate Judge White ordered the Parties to brief their positions regarding "the class certification and fact discovery deadlines" and set a Case Management Conference for June 25, 2026. (*See* ECF No. 97.) In their letter brief, Plaintiffs noted that their request for a six-month extension of all deadlines was the result of LPL's "delayed production of discovery for months" and production "after the current amendment deadline" of "significant materials confirming, among other things, that it owed and breached fiduciary duties to its advisory clients." (*See* ECF No. 108-3 at 6.) Plaintiffs added that, "[b]ased on those materials, [they] plan[ned] to seek leave to amend the Complaint to conform to the evidence and, at a minimum, re-assert fiduciary duty claims on behalf of a subclass of advisory clients." (*See id.*) Plaintiffs therefore proposed a deadline of July 17, 2026, to file the instant Motion. (*See id.* at 13.) LPL addressed Plaintiffs' request to amend in their responsive letter. (*See* ECF No. 108-4 at 21.)

At the June 25, 2026 Case Management Conference, Magistrate Judge White agreed to "extend all future scheduling dates . . . , with status conferences set once per month to ensure the case continues to move forward." (*See* ECF No. 98.) He also ordered Plaintiffs to "file a motion seeking leave from the U.S. District Judge to amend the complaint on or before July 17, 2026." (*See id.*) The instant Motion followed on July 17, 2026. (*See generally* ECF No. 100.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a), a plaintiff may amend their complaint once as a matter of course within specified time limits. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Amendments seeking to add claims are to be granted more freely than amendments adding parties." *Union Pac. R. Co. v. Nev. Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991) (citing *Martell v. Trilogy Ltd.*, 872 F.2d 322, 324 (9th Cir. 1989)).

After a pretrial scheduling order establishing a timetable for amending the pleadings has been filed, however, any request for leave to amend is reviewed under Federal Rule of Civil Procedure 16. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294–95 (9th Cir. 2000). "Where a party moves to amend the pleadings after a deadline set in the Rule 16 scheduling order, the Court should not modify the scheduling order 'except upon a showing of good cause.'" *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 430 F. Supp. 2d 1157, 1163 (D. Nev. 2006) (quoting Fed. R. Civ. P. 16(b)). Only after a party "satisf[ies] the 'good cause' requirement" will the court consider "whether an amended pleading under Rule 15 is proper." *Hoffman v. Blattner Energy, Inc.*, 315 F.R.D. 324, 335 (C.D. Cal. 2016).

"Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

"While a court may take into account any prejudice to the party opposing modification of the scheduling order, 'the focus of the [Rule 16(b)] inquiry is upon the moving party's reasons for seeking modification. . . . If that party was not diligent, the inquiry should end.'" *In re W. States Wholesale Nat. Gas*, 715 F.3d 716, 737 (9th Cir. 2013) (quoting *Johnson*, 975 F.2d at 609).

## ANALYSIS

Through the instant Motion, Plaintiffs seek leave to file their Proposed Amended Consolidated Class Action Complaint realleging their previously dismissed breach of contract and breach of fiduciary duty claims based on documents produced by LPL during discovery. (*See generally* Mot.; *see also* ECF Nos. 100-1 & 117-1 ("Redacted Mem.") & 111 ("Sealed Mem.").) LPL opposes on the grounds that Plaintiffs have failed to establish good cause under Rule 16(b) because Plaintiffs were not diligent, (*see* Opp'n at 13–22), the requested amendment would significantly prejudice LPL, (*see id.* at 22–24), and Plaintiffs also fail to satisfy the Rule 15 standard. (*See id.* at 24–25.)

### I. Rule 16(b)

As an initial matter, Plaintiffs contend that Rule 16 does not apply here "because Plaintiffs are seeking leave to amend within the deadline set by [Magistrate Judge White]—July 17, 2026." (*See* Mem. at 18 n.5; *see also* Reply at 2, 8.) The Court does not agree. Magistrate Judge White's Minute Order is clear—while he set a deadline for Plaintiffs to file the instant Motion, he did not make a finding of good cause or amend the Scheduling Order to extend the deadline by which to move to amend the pleadings. (*See* ECF No. 98 ("Plaintiffs shall file a motion seeking leave from the U.S. District Judge to amend the complaint on or before July 17, 2026.").) Plaintiffs' arguments to the contrary are incorrect.

The Court therefore first applies Rule 16, under which "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Once the district court had filed a pretrial scheduling order pursuant to . . . Rule . . . 16 [that] established a timetable for amending pleadings that rule's standards controlled."

*Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 764 (9th Cir. 2017) (quoting *Johnson*, 975 F.2d at 607–08). "The good cause standard of Rule 16(b) primarily considers the diligence of the party seeking the amendment." *Id*. "While a court may take into account any prejudice to the party opposing modification of the scheduling order, 'the focus of the [Rule 16(b)] inquiry is upon the moving party's reasons for seeking modification. . . . If that party was not diligent, the inquiry should end.'" *In re W. States Wholesale Nat. Gas*, 715 F.3d at 737 (quoting *Johnson*, 975 F.2d at 609).

LPL contends that Plaintiffs were not diligent, (*see* Opp'n at 14–22), and that the proposed amendments would significantly prejudice LPL.[2] (*See id.* at 22–24.) Regarding diligence, LPL contends that Plaintiffs' assertions are conclusory and insufficient. (*See id.* at 15 (citing *Argonaut Ins. Co. v. Travelers Cas. & Sur. Co.*, No. 2:22-cv-01036-LK, 2024 WL 4107712, at *3 (W.D. Wash. Sept. 6, 2024)). But Plaintiffs make clear that they served their first set of document requests on LPL on August 1, 2025, (*see* Blatchley Decl. ¶ 4)—five-and-a-half months before the January 15, 2026 deadline to move to amend the pleadings, (*see* ECF No. 74 ¶ 1)—and that LPL failed to produce any documents responsive to those requests until after the deadline, (*see* Floren Decl. ¶¶ 12–14 (noting that LPL began reviewing and producing documents after the February 2, 2026 Discovery Conference)), and only substantially completed its sizable document production in mid-April 2026, (*see* Blatchley Decl. ¶ 9; *see also* Floren Decl. ¶ 15)—three months after the deadline had expired. Further, Plaintiffs disclosed to LPL their intention to file the instant Motion on May 28, 2026, (*see* Floren Decl. ¶ 24), approximately six weeks into their review of LPL's 282,000 pages of documents and "hundreds of millions of pages of customer account data." (*See id.* ¶ 15.) In short, this clearly is not an instance in which Plaintiffs sat on their hands

[2] "Although diligence is the main focus of the good cause inquiry in the Ninth Circuit, the existence or degree of prejudice to the party opposing the modification is also relevant." *See C.F. v. Capistrano Unified Sch. Dist.*, 656 F. Supp. 2d 1190, 1196 (C.D. Cal. 2009) (citing *Johnson*, 975 F.2d at 609), *aff'd*, 654 F.3d 975 (9th Cir. 2011). Because prejudice is among the *Foman* factors addressed under Rule 15(a), the Court will consider LPL's arguments concerning prejudice below. *See infra* Section II.C.

or dragged their feet—Plaintiffs filed this Motion within approximately three months of receiving hundreds of millions of pages of documents and data from LPL, eight-and-a-half months after Plaintiffs first requested them. *See, e.g.*, *Bowen v. Target Corp.*, No. CV-16-2587-JGB-MRWX, 2019 WL 9240985, at *3 (C.D. Cal. Nov. 12, 2019) ("The volume and complexity of discovery in a case is an acceptable reason for delayed amendment." (citing *Sandoval v. Cnty. of Sonoma*, No. 11-cv-05817-THE, 2014 WL 3956764, at *2 (N.D. Cal. Aug. 12, 2014); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*, No. 09-C-0916, 2011 WL 679337, at *2 (E.D. Wis. Feb. 16, 2011); *United States v. Sturdevant*, No. 07-2233-KHV-DJW, 2008 WL 4198598, at *7 (D. Kan. Sept. 11, 2008))). Further, LPL cannot credibly claim that Plaintiff should have filed the instant Motion by the January 15, 2026 deadline when LPL itself failed to produce the documents referenced in the Proposed Amended Consolidated Class Action Complaint until months after that deadline had passed. The Court therefore concludes that Plaintiffs have demonstrated their diligence and, accordingly, good cause under Rule 16(b). *See, e.g.*, *E.E.O.C. v. Bay Club Fairbanks Ranch, LLC*, 475 F. Supp. 3d 1099, 1103 (S.D. Cal. 2020) ("The appropriate test of a party's diligence focuses on when that party obtained new information leading to the motion to amend. Based on Plaintiff remaining active in attempting to obtain new information to support the proposed FAC, . . . Plaintiff has demonstrated diligence and good cause to amend." (citing *Zivkovic v. S. Calif. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002))).

**II. Rule 15(b)**

Once Rule 16 is satisfied, leave to amend should be "freely given as justice so requires." Fed. R. Civ. P. 15(a). Granting leave to amend rests in the sound discretion of the district court. *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996). "Although the rule should be interpreted with extreme liberality, leave to amend is not to be granted automatically." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citations omitted). Five factors, also known as the "*Foman* factors" because they were articulated in *Foman v. Davis*, 371 U.S. 178 (1962), are taken into account to assess the

propriety of a motion for leave to amend under Rule 15: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended the complaint. *See Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "Amendments seeking to add claims are to be granted more freely than amendments adding parties." *Union Pac. R. Co. v. Nev. Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991) (citation omitted).

Because LPL contends that none of the factors weigh in favor of granting Plaintiffs' Motion, (*see* Opp'n at 24–25), the Court addresses each in turn below.

***A. Bad Faith***

"Bad faith has been construed by the Ninth Circuit as an amendment sought with 'wrongful motive' or a plaintiff 'merely . . . seeking to prolong the litigation by adding new but baseless legal theories.'" *Bowen v. Target Corp.*, No. CV162587JGBMRWX, 2019 WL 9240985, at *5 (C.D. Cal. Nov. 12, 2019) (quoting *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881 (9th Cir. 1999)) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987)). Here, LPL contends that "the procedural history demonstrates Plaintiffs' lack of good faith" because "[t]hey declined repeated chances to amend." (*See* Opp'n at 24.) There is no indication, however, that Plaintiffs have been dilatory, *see supra* Section I, or that their theories are baseless. *See infra* Section II.D. Indeed, to the Court, the procedural history reveals that Plaintiffs waited to discover facts providing good cause for their proposed amendments rather than amending futilely and prematurely. The Court therefore concludes that this factor does not weigh against granting Plaintiffs' Motion.

***B. Undue Delay***

Although LPL argues that, "for all of the reasons Plaintiffs were not diligent in seeking amendment, they have also unduly delayed their motion for leave," (*see* Opp'n at 24), the Court has found that Plaintiffs were diligent in discovering the basis for their proposed amendments and in bringing the instant Motion. *See supra* Section I. The Court therefore necessarily concludes that Plaintiffs have not unduly delayed.

/ / /

### *C. Prejudice*

The Ninth Circuit has instructed courts that "it is the consideration of prejudice to the opposing party that carries the greatest weight" in considering the factors to be considered under *Foman*. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *DCD Programs*, 833 F.2d at 185). Indeed, "[p]rejudice is the 'touchstone of the inquiry under rule 15(a),'" *see id.* (quoting *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001)) (citing *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973)), and, "[a]bsent prejudice, or a strong showing of any of the remaining Foman factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* (emphasis in original) (citing *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997)). "The party opposing amendment bears the burden of showing prejudice," *DCD Programs*, 833 F.2d at 187, and "[w]here a party opposes a motion for leave to amend on the basis of undue prejudice, the showing of prejudice must be substantial." *See SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1094 (S.D. Cal. 2002) (citing *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

LPL urges that granting Plaintiffs leave to file their Proposed Amended Consolidated Class Action Complaint would significantly prejudice LPL because it "would necessarily require renewed motion to dismiss briefing, which itself could require a several-months' extension of the schedule" and, "[d]epending on the outcome, and regardless of whether Plaintiffs intend to seek discovery regarding any newly-added claims, LPL would undoubtedly seek discovery regarding those claims, including regarding potential defenses." (*See* Opp'n at 22; *see also id.* at 25.) Further, "Plaintiffs' proposed amendment would require LPL's expert witnesses . . . to completely redo many of their analyses, which have to this point appropriately focused on the existing claims." (*See id.* at 23.) This "would be extremely costly, time consuming, and burdensome." (*See id.* at 24.)

/ / /

First, it should go without saying that LPL would not be "necessarily *require[d]*" to file a Rule 12(b) motion in response to the Proposed Amended Consolidated Class Action Complaint; LPL could, of course, elect to answer and, if appropriate, move for judgment on the pleadings under Rule 12(c) or summary judgment under Rule 56 at a later time. In any event, LPL has thoroughly argued its perceived deficiencies, (*see* Opp'n at 6–12, 15–21, 25 (contending that Plaintiffs' proposed amendments are futile "because they are repackaged theories the Court has already rejected and do not comprise new, legally cognizable claims")), meaning "the time and resources it will take to restate their position in any response to Plaintiffs' proposed . . . Amended [Consolidated Class Action] Complaint should be relatively minimal." *See S.D. Coastkeeper v. Pick-Your-Part Auto Wrecking*, No. 22-CV-1693 TWR (DDL), 2023 WL 2801199, at *2 (S.D. Cal. Apr. 5, 2023).

Second, "[n]either delay resulting from the proposed amendment nor the prospect of additional discovery needed by the non-moving party in itself constitutes a sufficient showing of prejudice." *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, No. C 06-3359 JF (RS), 2009 WL 667171, at *2 (N.D. Cal. Mar. 10, 2009) (first citing *DCD Programs*, 833 F.2d at 187; then citing *Genentech, Inc. v. Abbott Labys.*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989); then citing *United States v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989)). The Court understands that LPL has invested a considerable amount of time and money in its expert discovery. (*See* Opp'n at 23–24; Floren Decl. ¶ 22; *see also generally* ECF No. 108-6 ("Wong Decl.").) LPL apparently approved Analysis Group, Inc. to begin work on this case in mid-November 2025, (*see* Wong Decl. ¶ 5), and, as of July 31, 2026, Analysis Group, Inc. had performed "over 800 hours of work in connection with analyzing the damages theories associated with Plaintiffs' current surviving claims." (*See id.* ¶ 15.) Analysis Group, Inc. and LPL contend that, if the Court permits Plaintiffs to file their Proposed Amended Consolidated Class Action Complaint, "[m]ost of the 800 hours of work that Analysis Group performed in connection with Plaintiffs' current surviving claims would no longer be relevant or usable." (*See id.*

¶ 16; *see also* Floren Decl. ¶ 22.) Had LPL produced documents to Plaintiffs with the same alacrity with which they retained Analysis Group, Inc., however, the Court has no doubt that this Motion would have been filed much sooner and that any allegedly sunken costs would have been substantially limited.

Finally, Plaintiffs' reassertion of its previously dismissed breach of contract and breach of fiduciary duty causes of action do not "greatly alter[] the nature of the litigation." *Cf. Morongo Band of Mission Indians*, 893 F.2d at 1079. In any event, "the parties will have adequate time to prepare for the newly pleaded claims," and, "[i]f further discovery is necessary, there is time for the Court to order such discovery." *See Veg Ex, LLC v. W. Cent. Produce, Inc.*, No. 2:22-CV-01587-MEMF-JC, 2023 WL 11983386, at *4 (C.D. Cal. Nov. 2, 2023). "Although Defendant[] may incur additional costs, this is always the case when a plaintiff adds new claims and is not sufficient to overcome the liberal policy favoring amendment." *See id.* (citing Fed. R. Civ. P. 15(a)(2)).

For all these reasons, the Court concludes that LPL has failed to establish that permitting Plaintiffs to file their Proposed Amended Consolidated Class Action Complaint will cause LPL prejudice substantial enough to outweigh the remaining *Foman* factors and Rule 15(a)'s liberal policy favoring amendment.

### *D. Futility*

LPL contends that "Plaintiffs' proposed amendments would be in vain anyway because they are repackaged theories the Court has already rejected and do not comprise new, legally cognizable claims." (*See* Opp'n at 25 (citing *Memjet Tech. Ltd. v. Vanguard Graphics Int'l*, No. 3:23-cv-1810-JES-AHG, 2025 WL 976915, at *6 (S.D. Cal. Apr. 1, 2025)); *see also id.* at 6–12.) Like Plaintiffs' argument concerning Magistrate Judge White's extension of the deadline to seek leave to file an amended pleading, the Court finds this argument to be incorrect.

Both Plaintiffs' amended breach of fiduciary duty and breach of contract claim rely on documents that were not before the Court when it issued its prior Dismissal Order. (*See generally* ECF Nos. 100, 111-2, 117-3 (redlines comparing PACCAC with CCAC).)

Based on the documents produced by LPL, it appears that LPL's senior executives themselves believed that LPL had a fiduciary duty to LPL's Corporate Advisory clients with respect to their swept cash, (*see, e.g.*, PACCAC ¶¶ 4, 112–13, 122), which may be relevant to whether a fiduciary duty existed. *See, e.g.*, *Goldsmith v. UBS Fin. Servs. Inc.*, No. 1:24-CV-6354-GHW, 2026 WL 819461, at *20–21 (S.D.N.Y. Mar. 25, 2026) (concluding that the plaintiffs had plausibly alleged the existence of a fiduciary relationship where the contract between the plaintiffs and their broker-dealer "acknowledged it was acting as a fiduciary");[3] *Doe v. Harbor Schs., Inc.*, 446 Mass. 245, 253, 843 N.E.2d 1058, 1064–65 (2006) (concluding on summary judgment that the defendant owed the plaintiff a fiduciary duty where, "while denying the existence of a fiduciary relationship, [he] acknowledged in his answer to [the plaintiff]'s complaint that he was required to act in [the plaintiff]'s best interests"). As for breach of contract, Plaintiffs now allege that while LPL promised its clients that "[t]he interest rates paid are determined by the amount the Banks are willing to pay," (*see* PACCAC ¶ 9), the rate was actually set by LPL's CFO Matt Audette, former CEO Dan Arnold, and CIO Burt White. (*See id.* ¶ 80 (January 27, 2022 email from Audette to Rich Steinmeier: "Burt and I…..really me….set pricing on deposits. And margin.").) Simply stated, these are not the same "theories the Court has already rejected."

Further, "[a]t this stage of the litigation, the Court is not ruling on the sufficiency of the proposed pleadings, but only on whether 'no set of facts' can be proven that would constitute a valid and sufficient claim." *Santos v. Fid. Nat'l Title Ins. Co.*, No. 24CV2069-GPC(MSB), 2025 WL 1361478, at *2 (S.D. Cal. May 9, 2025) (quoting *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017)). Because this is not a situation in which "'no set of facts can be proved under the amendment to the pleadings that would

[3] As the Court previously noted, (*see* Dismissal Order at 31 n.8), the Supreme Judicial Court of Massachusetts could "discern no relevant difference between the fiduciary duty law of New York and Massachusetts," concluding that "application of either State's law would yield the same result here." *See UBS Fin. Servs., Inc. v. Aliberti*, 483 Mass. 396, 405 n.12 (2019).

constitute a valid and sufficient claim or defense,' or when they 'are either duplicative of existing claims or patently frivolous,'" *Regalado v. Fresno Cnty.*, No. 1:23-CV-00672-KES-BAM, 2024 WL 4729523, at *5 (E.D. Cal. Nov. 8, 2024) (first quoting *Missouri ex rel. Koster*, 847 F.3d at 656; then quoting *Murray v. Schriro*, 745 F.3d 984, 1015 (9th Cir. 2014)), Plaintiffs' proposed amendments are not futile. Although "[t]hat does not mean that the allegations have merit or that the Court thinks that they can ultimately be proven," *see FlatWorld Interactives LLC v. Apple Inc.*, No. 12-CV-01956-WHO, 2013 WL 6406437, at *3 (N.D. Cal. Dec. 6, 2013), "[t]he Court defers addressing [LPL's] arguments about the merits of the proposed claims at this stage of the proceedings." *See Regalado*, 2024 WL 4729523, at *6 (citing *Wood v. Cnty. of Stanislaus*, No. 2:21-cv-01572-TLN-KJN, 2023 WL 7283525, at *2 (E.D. Cal. Nov. 2, 2023)).

***E. Prior Amendment***

Finally, LPL urges that Plaintiffs' Proposed Amended Consolidated Class Action Complaint "would be Plaintiffs' *fifth* complaint" because "[t]he three named Plaintiffs each filed complaints and they collectively filed another." (*See* Opp'n at 25 (emphasis in original).) Further, "Plaintiffs were previously granted leave to amend and an opportunity to move for leave to amend, but chose not to." (*See id.*) "A district court may deny a plaintiff leave to amend if it determines that . . . the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Bowen*, 2019 WL 9240985, at *6 (alteration and emphasis in original) (quoting *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010)). But that has not happened here, where it was the Court—at the joint request of the Parties, (*see* ECF No. 29 at 4)—that ordered Plaintiffs to file their initial Consolidated Class Action Complaint, (*see* ECF No. 30 ¶ 9), and Plaintiffs exercised discretion in electing not to file an amended complaint until good cause existed to do so. This factor therefore does not weigh against granting Plaintiffs' Motion.

***F. Conclusion***

On balance, the *Foman* factors weigh in favor of granting Plaintiffs' Motion.

/ / /

## CONCLUSION

Because Plaintiffs have established good cause under Rule 16(b) and the *Foman* factors weigh in favor of granting amendment under Rule 15(a), the Court **GRANTS** Plaintiffs' Motion (ECF Nos. 100, 117). Accordingly, Plaintiffs **SHALL FILE** the public redacted version of their Proposed Amended Consolidated Class Action Complaint, which was previously filed at ECF No. 117-3, as their operative Amended Consolidated Class Action Complaint. LPL **SHALL RESPOND** to the Amended Consolidated Class Action Complaint within twenty-one (21) days of its electronic docketing.

**IT IS SO ORDERED.**

Dated: September 24, 2026

Honorable Todd W. Robinson
United States District Judge